IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STEELWORKERS OF
AMERICA, AFL-CIO, CLC, et al.,

       Plaintiff,       Case No. 3:03 CV 7589

 -vs-

                  MEMORANDUM OPINION

METROPOLITAN DISTRIBUTING
COMPANY,

       Defendant.

KATZ, J.

  Plaintiffs and Defendant have each filed motions for summary judgment and each has filed a response and reply.(Doc. Nos. 27 and 26 respectively) After a thorough review of the matter, the Court will grant Plaintiff's motion for summary judgment and deny that of the Defendant.

## BACKGROUND

  The Plaintiffs have previously filed a compliant seeking to enforce a written settlement agreement arising out of the resolution of a strike and the several unfair labor charges which were then pending with the National Labor Relations Board ("NLRB"). The Collective Bargaining Agreement ("CBA") between the Union and the Defendant expired April 30, 2001 and a strike ensued. During the strike, James Haines ("Haines") was involved in a motor vehicle accident between his vehicle and one owned and operated by the Defendant. That incident occurred on August 21, 2002 and resulted in misdemeanor charges being filed against Haines. He was subsequently tried and convicted of a moving violation and

disorderly conduct with persistence in Maumee Municipal Court. As a result of the foregoing incident, Haines was discharged in August of 2002.

In January of 2003, the parties entered into a new CBA and at the same time resolved the unfair labor charges pending before the NLRB through a one page Settlement Agreement pursuant to which Haines was to be reinstated to his "former position of employment but Haines will serve a four month suspension without pay effective Friday, January 17, 2003." He was to be reinstated without back pay on May 17, 2003, to begin work on Monday May 19, 2003. The suspension did not affect his seniority or route bidding rights. While the settlement apparently was reached in January 2003, the Settlement Agreement itself bears the date of March 28, 2003 next to each signature, one by the Union representative and one by the Company representative. The Company also agreed to send Haines a letter with a copy to the Union, which letter was to outline the conditions of reinstatement; any and all references to his discharge and suspension were to be removed from his employment file.

Pursuant to the Settlement Agreement, the Company advised Haines by letter prior to his return to work that he would not be permitted to return as a driver, but could return to a position in the warehouse and still retain his seniority and route bidding rights. Haines did, in fact, return to employment in the warehouse. The stated reason for the inability of the Company to return him to his former position as a route driver was because of the fact that Cincinnati Insurance Co., the company which issued the liability insurance policy covering the Company and its drivers, had indicated to the Defendant that Haines would be excluded from coverage due to the incident described above. The fact of that exclusion is not in question. Clearly, the Defendant did not seek alternative coverage from other companies but did request reconsideration by Cincinnati Insurance Co., to no avail. Haines continued to work in the

2

warehouse until he was again covered under the said insurance policy, when he returned to work as a driver.

The sole count of the complaint is for breach of a private settlement contract and the prayer seeks reinstatement to the driver position formerly held by Haines and to make him whole for any difference in earnings from the company during the interim period. The Defendant's answer sets forth the defense of impossibility of performance arising out of the refusal of the insurer to cover Haines as a driver.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."
*Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or

4

whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## DISCUSSION

As a preliminary matter, the Court has been provided with a transcript of the trial of Haines in Maumee Municipal Court, which was conducted on June 11, 2003, subsequent to the execution of the Settlement Agreement and subsequent to his return to work in the warehouse. Thus, the Settlement Agreement was reached prior to the outcome of Haines criminal case. Plaintiffs in their various memoranda repeatedly assert collusion between and among Defendant, Cincinnati Insurance Co. and the insurance agency representing the Defendant. As an example, they note that one of the attorneys for the Defendant contacted the insurance agent prior to the return to employment of Haines requesting information as to whether Haines would be covered under the insurance policy. Upon inquiry, the insurance agent was advised by Cincinnati that he would not and he so advised the Defendant Company. There is absolutely no evidence of collusion but merely evidence that an attorney representing a client was diligent in determining whether an employee would be covered under the liability insurance policy of that client. That coverage is important because of the exposure of an uninsured employer to significant damage if the employee becomes involved in an accident and is not, at the time of the accident, covered by the liability insurance policy carried by the employer.

The case law involving impossibility of performance as an affirmative defense is relatively sparse and the Court has found no cases directly on point. The cases cited by the parties are helpful, in the main, only in discussions of the issues. The Court believes it unnecessary to delve into the issue as to whether that defense is available in a setting related to or arising out of an NLRB matter or series of

5

matters. Because the Court believes that the complaint frames this case in the nature of a cause of action arising out of a private settlement agreement attendant to a labor dispute, the affirmative defense of impossibility or impracticality of performance can, in fact, apply.

Defendant has cited a number of cases including, *Nebraska Bulk Transport, Inc. v. NLRB,* 608 F.2d 311 (8th Cir. 1979). In that case the Court affirmed the Company's discharge of an employee for whom the insurance carrier had advised that it would not extend liability coverage due to his poor driving record. The Court stated the obvious "paradox of ordering reinstatement of a driver who, under the evidence, cannot be insured." *Id.* At 316. Subsequently, a district court in *Hess v. Resort Air Inc.,* 686 F.Supp. 741, 743 (E.D. Mo. 1988) declared its agreement with the *Nebraska* decision and held "[there] is no requirement for an employer to retain uninsurable employees . . . ." The employer then relocated those employees to non-driving positions.

The subsequent case of *Weelabrator Envirotech Operating Services, Inc.. v. Massachusetts Laborer's District Council, Local 1144*, 88 F.3d 40 (1st Cir. 1996) tangentially involved the issue of impossibility of performance as an excuse in a case which involved a challenge to an arbitrator's decision that the employer breached a successor clause of the Collective Bargaining Agreement. In framing the issue the court articulated the well settled law that while performance may become impracticable or impossible, that will not excuse performance if the event creating impossibility or impracticability of performance was reasonably foreseeable. *Id.* at 44. The *Weelabrator* court held that the events which did in fact occur were foreseeable and, thus, this second branch of the impossibility of performance defense deprived the company of a viable defense.

Generally speaking, the texts discuss the defendants' affirmative defense as one involving supervening impossibility of performance as contrasted to original impossibility, the latter of which occurs at the time of the execution of the contract. As expressed in Restatement (Second) Contracts, § 261 (1981), the defense of impossibility of performance may be raised where the parties performance is made impracticable. The courts generally view this as involving extreme impracticability of performance. Extreme impracticability of performance is regarded as having the same affect as impossibility of performance. *See Brown v. Midamerican Waste Systems, Inc.,* 924 F. Supp. 92 (S.D. Indiana 1996).

For supervening impossibility of performance to be a viable affirmative defense, the impossibility must be fortuitous or unavoidable *and* unforeseeable or unanticipated as a risk. *See.* 17 Am. Jur.2d, *Contracts* § 659 (2004) and the cases there cited. There is also a defense which has sparingly been reported of "temporary supervening impossibility of brief duration," which does not excuse the promissor from performing when the impediment is removed. It is said that the duty to perform is suspended during the period when it cannot be due to the impediment. This argument, while it could appear to be viable here, has not been raised by the defendant and will not be considered by the Court.

The First Circuit in *Weelabrator* stated the issue under consideration as follows:

Excuse under the contract doctrine of impossibility depends not simply on whether performance has become substantially impossible, but also on whether or not the parties reasonably foresaw and allocated the risk that the event or circumstances making performance impossible might occur.

*Id*. at 44.

Note that the *Weelabrator* court framed the question as not whether the parties could have anticipated the event, but did they. In the instant case, it is clear that the parties were caught up in

7

resolving a strike, entering into a new CBA and resolving unfair labor practice charges pending before the NLRB. However, it is also clear that before the actual execution of the agreement settling the unfair labor practice charges and the Haines discharge matter, the parties were each aware of the pending charges against Haines in Maumee Municipal Court and could clearly have included a clause in the Settlement Agreement declaring that the company would be relieved of rehiring him as a driver if the insurer refused to cover Haines in that capacity. Since the criminal case was still pending and not resolved until June of 2003, the eventuality of uninsurability clearly could have been foreseen by the Defendant and provided for in the contract.

An issue has been raised by the Defendant that it had a pattern of refusing to permit drivers to continue in those positions when uninsurable, which was the situation in the *Hess* case. However, the establishment of a pattern of behavior is an issue of fact which must be established at trial. Further, assuming that was, in fact, the pattern of practice of the Defendant, it further put the Defendant on notice that that eventuality should have been provided for in the fourth paragraph of the Settlement Agreement involving the Haines resolution.

Another issue which creates some question as to the availability of the defense of impossibility or impracticability of performance is whether the Defendant could have obtained insurance through Cincinnati Insurance Co. by agreeing to pay a rated premium with respect to the coverage on Haines. Since no request was made and no response to such a request was given, that issue is not before the Court.

Assuming the impossibility or impracticability of performance arising out of the exclusion of Haines from coverage under the liability insurance policy of the Defendant, it is the Court's conclusion

8

that the affirmative defense is still unavailable to the Defendant because the eventuality of uninsurability was clearly foreseeable at the time of the execution of the contract. That eventuality could have been covered in the Settlement Agreement.

## CONCLUSION

Based upon the foregoing, it is the conclusion of the Court that the affirmative defense of impossibility of performance is not available to the Defendant and that as a result there was a technical breach of the specific terms of the Settlement Agreement with respect to Haines. While the Company acted responsibly in offering to return Haines, with seniority and route bidding rights, to employment albeit in the warehouse, the terms of the contract provided that he be returned to his former position as a driver. Accordingly, Plaintiff's motion for summary judgment (Doc. No. 26) is granted and Defendant's motion (Doc. No. 26) is denied.

Thus, liability having been established by the granting of the Plaintiffs' motion for summary judgment, there remains but the issue for trial of the damages attributable to the difference between that which would have been earned by Haines as a driver and that which was earned as an employee in the warehouse. To further guide the parties, the Court will consider actual earnings received, as against the earnings he would have earned as a driver; Plaintiffs have urged the Court to consider the difference in hours worked to create the same earnings, but clearly the measure of damages is that which he earned irrespective of hours, as compared to that which he would have earned as a driver.

To that end, the Court will also deny as moot the Defendant's motion for reconsideration (Doc. No. 37), Defendant's motion for a protective order (Doc. No. 40), and Plaintiff's motion to enforce the discovery order (Doc. No. 45). A status conference by telephone is set for October 3, 2005 at 10:30

a.m. for the purpose of setting a date for trial of the damages aspect of this case as well as to address additional outstanding discovery necessary for trial.

    IT IS SO ORDERED.

                                                  s/ *David A. Katz*
                                                  DAVID A. KATZ
                                                  SENIOR U. S. DISTRICT JUDGE